IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                                *       Criminal No. RDB-16-0165

DONALD MCDUFFIN
WILLIAMS, *et al.*,

Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM ORDER**

Defendants Donald McDuffin Williams ("Williams") and Rashon Pratt ("Pratt") (collectively "Defendants")[1] have both been charged, via a twelve-count Third Superseding Indictment (ECF No. 145), with Sex Trafficking Conspiracy, in violation of 18 U.S.C. § 1594(c) (Count One); Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591(a) (Counts Two & Three); Interstate Prostitution Conspiracy, in violation of 18 U.S.C. § 371 (Count Five); Interstate Transportation for Prostitution, in violation of 18 U.S.C. § 2421 (Counts Six, Seven & Eight); Enticement to Travel Interstate for Purposes of Prostitution, in violation of 18 U.S.C. § 2422(a) (Count Nine); and Use of Interstate Facilities to Promote an Enterprise Involving Prostitution Offenses, in violation of 18 U.S.C. § 1952(a)(3) (Count Eleven).  Williams alone has been charged with additional counts of Actual and Attempted Sex Trafficking of a Minor, in violation of 18 U.S.C. §§ 1591(a) & 1594(a) (Count Four); Use of Interstate Facilities to Promote an Enterprise Involving

---

[1] Williams' sister, Tiffany Lowery, was initially named as a Defendant in this case.  However, the Government has since indicated that Lowery is deceased "as a result of an unrelated killing."  *See* Mot., ECF No. 56.  Upon motion of the Government, all counts against Lowery have now been dismissed. *See* Order, ECF No. 57.

1

Prostitution Offenses, in violation of 18 U.S.C. § 1952(a)(3) (Count Ten); and Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(4) (Count Twelve).

The Defendants have filed a series of pretrial motions, seeking to suppress certain physical evidence and statements obtained in connection with the investigation of this case. A two-day hearing on the pending motions was held on February 15, 2017 and February 16, 2017, during which time this Court heard testimony from law enforcement officers involved in the investigation. Following that hearing, the parties submitted supplemental briefing (ECF Nos. 138, 139, *et seq.*). For the reasons stated herein, Defendant Williams' Motion to Suppress Statements (ECF No. 65) is now GRANTED with respect to his statements to law enforcement during a two-hour interrogation, beginning at 10:07 p.m. on November 12, 2015, over sixteen hours after his arrest. All other motions are held *sub curia*, pending the scheduling of a second motions hearing.

**BACKGROUND**

In the early morning hours of November 12, 2015, a security guard at the TA Truck Stop in Jessup, Maryland encountered a prostitute named "Rose," who informed him that she was "tired of her lifestyle" and "wanted help." Feb. 15, 2017 Hearing Tr., pp. 115-16. The security guard proceeded to call Howard County Police Officer Desmond Tubman for assistance at approximately 4:36 a.m., and Officer Tubman arrived at the truck stop shortly thereafter. *Id.* at 116-17. Rose told Officer Tubman that Defendant Donald McDuffin Williams ("Williams") was her "pimp" and that he was waiting outside in a gray van. *Id.* at 118-19. After briefly questioning Williams as to why he was waiting at the truck stop, Officer Tubman handcuffed him and detained him in his patrol vehicle while "human

2

trafficking" detectives traveled to the scene. *Id.* at 122-25. He did not read Williams his *Miranda* rights.[2] *Id.* at 134-35. Detective Joshua Mouton, of the Howard County Police Department's "vice and narcotics unit," arrived at the truck stop around 5:50 a.m. *Id.* at 171-73. He also briefly spoke to Williams without reading him his *Miranda* rights. *Id.* at 140, 176. At approximately 5:55 a.m., Officer Tubman transported Williams to the Howard County Detention Center, "[t]wo minutes across the street," for booking. *Id.* at 126, 176.

At Central Booking, Williams was placed in an isolation cell, pending the completion of Detective Mouton's investigation. February 16, 2017 Hearing Tr., p. 32-33. Although detainees at the Howard County Central Booking facility are normally permitted to communicate with others, including attorneys, during their confinement, Detective Mouton specifically instructed that Williams be "put on ice." *Id.* This meant that Williams was prohibited from making calls and from speaking to anyone, including a lawyer. *Id.*

Detective Mouton and his partner, Detective James-Wintjen, proceeded to question the prostitute at the truck stop, who had earlier gone by the name "Rose," but by that time called herself "Amanda."[3] *Id.* at 175, 177. Amanda explained that a large man named "Shawn/Sean" had first introduced her to Williams and "that there were other girls involved with this group," working out of the Lord Baltimore Hotel in Baltimore, Maryland. *Id.* at 177. She explained that Williams' sister was also involved in the operation, mostly "hang[ing] around the room with them, drink[ing] and smok[ing] and tell[ing] them what to do," and that Williams connected girls with "johns" via coded advertisements posted under

---

[2] In order to protect a criminal defendant's constitutional rights, the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966) "adopted prophylactic procedural rules that must be followed during custodial interrogations." *Burket v. Angelone*, 208 F.3d 172, 196 (4th Cir. 2000). The well-known *Miranda* warnings are "not themselves rights protected by the Constitution, but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).
[3] Detective Mouton later identified "Amanda" as "Tori Ritter." *Id.* at 181.

3

the name "X-Factor" on BackPage.com, a website well known to human trafficking investigators. *Id.* at 177-180.

After investigators finished speaking with Amanda, they transported her to a facility for victims of human trafficking, where she would have housing and access to counseling, if needed. *Id.* at 180-81. However, as Detective Mouton walked Amanda out of the truck stop, Amanda spotted the man she knew as "Shawn/Sean" and Williams' sister coming toward them. *Id.* at 181. Detective Mouton took Amanda to a waiting patrol car, but then returned to the building with Detective James-Wintjen and Officer Tubman to question the two individuals. *Id.* The man, "Shawn/Sean," was later identified as Defendant Rashon Pratt, and the woman was identified as Tiffany Lowery, Williams' now deceased sister. *Id.*

Detective Mouton approached Pratt and told him that he needed to speak to him. *Id.* at 183. He indicated to Pratt that he would feel "more comfortable" putting him in handcuffs, and Pratt did not resist. *Id.* at 183-84. Once Pratt was handcuffed, the other two officers left the area. *Id.* Without reading Pratt his *Miranda* rights, Detective Mouton began questioning him about the alleged human trafficking operation at a table in the far corner of the truck stop restaurant. *Id.*; February 16, 2017 Hearing Tr., p. 102. Detective Mouton has subsequently acknowledged that Pratt was not free to leave at this time. February 16, 2017 Hearing Tr., p. 98. Pratt revealed to Detective Mouton that he knew Williams and "Rose," but stated that he was not involved in human trafficking. February 15, 2017 Hearing Tr., p. 184. However, he did show Detective Mouton messages on his phone, which included a picture Detective Mouton recognized from prior his investigations as an "X-Factor" ad. *Id.* at 184-186. At about 7:55 a.m., Officer Tubman transported Pratt to the Howard County

4

Detention Center for booking. *Id.* at 128. Detective Mouton proceeded to the Lord Baltimore Hotel to conduct further investigation.

At 10:07 p.m. that night, approximately seventeen hours after Williams was initially detained, Williams was questioned by Detectives Mouton and James-Witjen. *Id.* at 36. Detective Mouton has indicated that the holding cells at Central Booking are brightly lit and that he was unaware of the last time Williams had slept at the time of the interrogation. *Id.* at 34-38. Additionally, Detective Mouton did not know the last time that Williams had taken his blood pressure medication. *Id.* at 38. Detective Mouton did not offer Williams any food or drink. *Id.* at 38. Williams signed a *Miranda* waiver form provided by Detective Mouton. *Id.* The detectives then proceeded to interrogate Williams for approximately two hours, during which time he made inculpatory statements. *Id.* at 37. Detective Mouton completed a statement of charges and statement of probable cause for Williams at 3:55 a.m. on November 13, 2015. *Id.* at 40. Williams finally appeared before a Maryland District Court Commissioner for his initial appearance at 11:39 a.m. on November 13, 2015, about thirty hours after his arrest. *Id.* at 2; *see also* Gov't Ex. 1.

## **ANALYSIS**

Defendant Williams has moved "to suppress *any and all* statements, admissions and confessions allegedly given by [him] . . . which the government proposes to use as evidence against him at trial." Mot. to Suppress Statements, p. 1, ECF No. 65 (emphasis added). In supplemental briefing filed since this Court's motions hearing on February 15 and 16, 2017, Williams now specifically challenges the admissibility of inculpatory statements that he made to law enforcement during a two-hour interrogation, following sixteen hours of isolated

5

confinement, on the day of his arrest. *See* Supp. Mots. Briefing, p. 8, ECF No. 138. He objects that any inculpatory statements he may have made at that time were "involuntary" and "obtained in violation of his right to prompt presentment." *Id.* at 8-17.[4]

Rule 5(a)(1)(A) of the Federal Rules of Criminal Procedure provides that "[a] person making an arrest within the United States must take the defendant *without unnecessary delay* before a magistrate judge, or before a state or local judicial officer," with limited exceptions (emphasis added). Additionally, 18 U.S.C. § 3501(c) provides that a law enforcement officer's delay in bringing an arrestee before a judicial officer may be excused, but only "if the confession was made *voluntarily* and '*within six hours*' following the arrest or other detention." *United States v. Alvarez-Sanchez*, 511 U.S. 350, 350 (1994) (quoting 18 U.S.C. § 3501(c)) (emphasis added). The United States Court of Appeals for the Fourth Circuit has confirmed in *United States v. Claridy*, 601 F.3d 276, 284–85 (4th Cir. 2010) that "a confession must be suppressed if (1) it was made prior to the arrestee's presentment to a magistrate judge; (2) the presentment to a magistrate judge was unreasonably or unnecessarily delayed; and (3) the confession was made *more than six hours* after the arrest or detention" (citing *Corley v. United States*, 556 U.S. 303, 321-22 (2009)) (emphasis added).

As discussed *supra*, Williams was detained by Howard County investigators in the early morning hours of November 12, 2015 and was transported to the Howard County Detention Center for booking at approximately 5:55 a.m. He was held in isolation for the entire day and was prohibited from contacting an attorney. Over sixteen hours later, at about 10:07 p.m., Howard County detectives began an approximately two-hour

---

[4] Williams' Motion *In Limine* to Exclude Defendant's Statements Made on January 14 and 15, 2015 (ECF No. 159), on the basis of relevancy and "unfair prejudice," remains pending before this Court.

interrogation, during which time Williams made inculpatory statements. It was not until 11:39 a.m. the following morning, about thirty hours after his arrest and well in excess of the six-hour presentment rule under 18 U.S.C. § 3501(c), that Williams was brought before a Maryland District Court Commissioner for his initial appearance.

The United States Supreme Court has noted in *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994) that 18 U.S.C. § 3501(c) only applies to " 'arrest[s] or other detention[s]' for a violation of federal law." Although Williams was not held on federal charges at the time of his interrogation by Howard County detectives, he has now been charged with several federal sex trafficking offenses. Additionally, Special Agent Leah Martinez of Homeland Security Investigations ("HSI") testified at this Court's February 16, 2017 hearing that federal law enforcement had been investigating Williams and the "X-Factor" prostitution advertisements as early as November of 2014, one year prior to Williams' arrest at the TA Truck Stop. February 16, 2017 Hearing Tr., pp. 169-172. In fact, Special Agent Martinez and two other HSI agents assisted Anne Arundel County Police in a prostitution investigation at an Annapolis, Maryland hotel in November of 2014, which led to Williams' arrest on November 5, 2014. *Id.* at 167-69. Agent Martinez, along with Detective Bernard Adkins of the Anne Arundel County Police Department, interviewed Williams in January of 2015 regarding his suspected involvement in prostitution and use of the name "X-Factor" in BackPage.com ads. *Id.* at 160-172. Furthermore, two HSI agents were physically present to assist Detective Mouton and his partner during their investigation at the Lord Baltimore Hotel on the morning of Williams' November 12, 2015 arrest. *Id.* at 173.

The Government has acknowledged in a prior brief in this case (ECF No. 119) that federal presentment rules do apply where "state officers are acting at the direction of or in concert with the federal officers, or there is collaboration between the federal and state authorities." *See* Gov't Consolidated Response, pp. 35-36, ECF No. 119. Additionally, the United States Court of Appeals for the Fourth Circuit in *United States v. Clenney*, 631 F.3d 658, 668 (4th Cir. 2011) has specifically observed that " 'in a federal criminal prosecution, federal standards [including the six-hour presentment rule under 18 U.S.C. § 3501(c)] govern the admissibility of evidence' " (quoting *United States v. Glasco*, 917 F.2d 797, 798 (4th Cir. 1990)). The defendant in *Clenney* was arrested by police in Virginia and charged with violating Virginia law. *Id.* at 661-62; 668-69. Although the Fourth Circuit ultimately held in that case that no presentment rule was violated, the Court applied the federal "six hour window" and rejected Clenney's "attempts to undermine this federal standard by citing Virginia law." *Id.* at 668. The United States Court of Appeals for the Seventh Circuit has likewise held in *United States v. Kirkland*, 567 F.3d 316, 320 (7th Cir. 2009) that a defendant may "suppress a statement in a federal prosecution based on excessive time spent in state custody" where the defendant has "establish[ed] a clear working arrangement between federal agents and state or local officials.").

Although the "six hour time limitation" under 18 U.S.C. § 3501(c) "does not apply if the delay is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate judge or other officer," *see United States v. Khweis*, No. 1:16-CR-143, 2017 WL 2385355, at *5 (E.D. Va. June 1, 2017) (citing 18 U.S.C. § 3501(c)), the Government has provided no justification for the

8

approximately thirty-hour delay in bringing Williams before a commissioner in this case. The Government contends that Williams waived prompt presentment by signing a waiver of rights form at 10:07 p.m. on November 12, 2015. Gov't Opp'n, p. 3, ECF No. 142. However, Detective Mouton has specifically testified that by initialing the waiver form Williams indicated he understood his rights, but "wasn't agreeing to anything." February 16, 2017 Hearing Tr., p. 38. Additionally, for reasons stated *infra*, neither the waiver nor Williams' statements during the two-hour interrogation that followed can be considered voluntary in light of the "totality of the circumstances."[5]

Even if the six-hour presentment rule does not apply, the facts of Williams' arrest, confinement, and interrogation indicate that his inculpatory statements to investigators were not voluntarily given. Even though Williams signed a *Miranda* waiver, this Court must still assess the "voluntariness" of his statements to law enforcement on the evening of November 12, 2015. *See Dickerson v. United States*, 530 U.S. 428, 444 (2000). "A statement is involuntary under the Fifth Amendment only if it is involuntary within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (*en banc*). "In considering the voluntariness of a statement under the Due Process Clause, [a court] must determine 'whether the confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.' " *United States v. Byers*, 649 F.3d 197, 215 (4th Cir. 2011) (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976)). " 'The proper inquiry is whether the defendant's will has

---

[5] The United States Supreme Court has explained in *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) that in assessing voluntariness, courts should assess "the totality of all the surrounding circumstances."

been overborne or his capacity for self-determination critically impaired.' " *Id.* (quoting *Braxton*, 112 F.3d at 780). "Courts must conduct this voluntariness inquiry in light of 'the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation.' *Id.* (quoting *Braxton*, 112 F.3d at 781). As the Fourth Circuit has recently noted, " '[t]he Government bears the burden of proving by a preponderance of the evidence that the statement was voluntary.' " *United States v. Giddins*, No. 15-4039, 2017 WL 2434713, at *6 (4th Cir. June 6, 2017) (quoting *Braxton*, 112 F.3d at 781).

Williams was held in confinement for approximately sixteen hours prior to his 10:07 p.m. interrogation, which then proceeded for approximately two hours. It was unclear at that time when Williams had last slept or received his blood pressure medication. He had been placed "on ice" the entire day, at the express direction of Detective Mouton, meaning that he was kept in isolation and prohibited from communicating with counsel. He was not provided with counsel for the interrogation. Additionally, Williams had not been given notice of the charges against him. Detective Mouton did not draft the charging documents until after the interrogation ended in the early hours of November 13, 2015. In assessing the "totality of the circumstances" for purposes of voluntariness, the Fourth Circuit has instructed courts to consider the defendant's individual characteristics and background, the setting in which the statement occurred, and the details of the interrogation or interview. *See United States v. Elie*, 111 F.3d 1135, 1143-44 (4th Cir. 1997). Under the totality of the circumstances, Williams' statements to law enforcement during a two-hour interrogation, beginning at 10:07 p.m. on November 12, 2015, over sixteen hours after his arrest, were not

voluntary. For all of these reasons, Williams' Motion to Suppress Statements (ECF No. 65) is GRANTED with respect to those statements, and those statements shall be suppressed.[6]

## CONCLUSION

For these reasons, it is HEREBY ORDERED this 27th day of June, 2017 that:

1. Donald McDuffin Williams' Motion to Suppress Statements (ECF No. 65) is GRANTED with respect to his statements to law enforcement during a two-hour interrogation, beginning at 10:07 p.m. on November 12, 2015, over sixteen hours after his arrest;

2. Donald McDuffin Williams' Supplemental Motions Briefing (ECF No. 138) is GRANTED with respect to his November 12, 2015 post-arrest statements;

3. All other motions are held *sub curia*, pending the scheduling of a second motions hearing; and

4. The Clerk of this Court shall forward copies of this Memorandum Order to counsel of record.

_____/s/_____
Richard D. Bennett
United States District Judge

---

[6] Williams' supplemental briefing following this Court's two-day motions hearing (ECF No. 138) has been docketed as a separate pending motion. For the reasons stated herein, that motion (ECF No. 138) is now granted with respect to Williams' statements made during a two-hour interrogation on November 12, 2015.